THERESA ANN GASE, APPELLANT AND CROSS-APPELLEE, V.
JOHN CHARLES GASE, APPELLEE AND CROSS-APPELLANT.
671 N.W.2d 223

Filed November 14, 2003.    No. S-02-1115.

Michael D. Gooch for appellant.

Angela L. Burmeister and Christian R. Blunk, of Berkshire & Blunk, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is an appeal from an order modifying a divorce decree awarding child support. Theresa Ann Gase filed a petition for modification of decree, seeking to modify the support being paid by John Charles Gase for the minor children of the parties. The

district court for Sarpy County entered an order increasing John's monthly support obligation. Theresa appeals the trial court's order. She claims that the trial court erred in calculating the parties' respective incomes, in incorrectly crediting John twice for the children of his second family, and in failing to retroactively apply the modification of child support. John cross-appeals, contending that the trial court erred in failing to add depreciation claimed on Theresa's federal income tax returns back to her income.

## BACKGROUND

Theresa and John are the parents of two children born July 3, 1983, and October 19, 1984. Their marriage was dissolved by a decree entered in the district court for Sarpy County. The decree awarded custody of the parties' minor children to Theresa with reasonable visitation to John. The decree further ordered John to pay child support in the sum of $175 per month for each child, for a total of $350 per month. John subsequently remarried; has two children with his current spouse, which children are ages 12 and 4; and lives in Texas. Theresa later filed an application for modification and, following a hearing on the application, the trial court entered an order modifying the decree. The modification order found that Theresa's net monthly income was $5,200 and that John's net monthly income was $2,800. Finding that there had been a material change in circumstances since entry of the original decree, the trial court ordered John to pay monthly child support of $675 for two children and $450 for one child.

On September 13, 2001, Theresa again filed a petition for modification of decree, seeking an increase of John's child support obligation. The petition indicates that it was sworn and subscribed to and served upon John by U.S. mail on April 23, 2001. At or around that time, John signed an undated voluntary appearance. John contends on appeal that the first notice he received that Theresa actually filed the petition for modification was early February 2002, when he received notice from the court that a hearing date had been set. The hearing date had been set for March 20. The record does not reveal whether John and Theresa had any additional discussions regarding the petition for modification between the time John signed the voluntary appearance in

approximately April 2001 and the time he learned of the hearing date in approximately February 2002. John's attorney entered her appearance in the matter on February 13. On February 14, John answered and filed a cross-petition requesting a decrease in his child support obligation. On April 22, John sought to continue the hearing originally set for April 25 for the reason that he had not received all responses to discovery. On May 15, Theresa served supplemental documents in reply to John's requests for production of documents.

An evidentiary hearing was held on May 23, 2002, at which John and his current wife's federal income tax returns for the years 1999 through 2001 were offered and received into evidence. John's 2001 W-2 wage and tax statement was also offered and received into evidence. Box No. 1 on John's 2001 W-2, entitled "Wages, tips, other compensation," reported income of $72,441.20. Box No. 12a of John's 2001 W-2 reported an undescribed dollar figure not otherwise included in box No. 1 in the amount of $9,509.20. Also offered and received into evidence was a copy of John's most current pay stub for the period ending March 31, 2002, which pay stub reported year-to-date earnings of $24,858.40. In addition to contributions made to a 401K and a flexible spending account, the pay stub also reflected current and year-to-date FICA payments. John's wife's monthly gross income in 2001 was $2,800.

Theresa is an attorney and is the sole shareholder of several corporations organized under subchapter S (S corporations): Lone Star Solutions, Inc.; Gase Technologies, Inc.; Peel Country, Inc.; and Gase and Associates. See I.R.C. § 1361(a)(1) (2000). Theresa's federal income tax returns for the years 1998 through 2001 and selected accompanying schedules were offered and received into evidence. The returns reported total income of $112,128 in 1998, $95,300 in 1999, and $127,134 in 2001. The 2000 return reported a $48,210 loss. The record reveals that Theresa received W-2 wage and tax statements from Gase Technologies for 1998 and 1999 and from Lone Star Solutions for 2001. Theresa's 1999 W-2 reported the amount of $89,090.76 in box No. 1, "Wages, tips, other compensation," and an undescribed amount in box No. 13 of $7,800. While it is not clear from the record whether the $7,800 was also included in the box

No. 1 income, the 1999 W-2 contains a section providing a summary listing of Theresa's income adjustments. This summary reported "EE 401K" deferrals of $7,800, which presumably describes the nature of the amount listed in box No. 13. The 2001 W-2 reported the amount of $32,199.96 in box No. 1, "Wages, tips, other compensation." Box No. 12a reported an undescribed dollar figure not otherwise included in box No. 1 in the amount of $2,799.94.

Theresa's federal income tax returns reported a $44,887 capital gain in 1999 and a $3,000 capital loss in each of the years 2000 and 2001. No capital gain or loss activity was reported in 1998.

Theresa's returns also reported deductions taken for both personal and business depreciation. On her 1999 personal federal income tax return, Theresa took depreciation deductions for rental real estate she personally owned and depreciation associated with Peel Country and Gase Technologies. On her 2000 personal federal income tax return, Theresa took depreciation deductions associated with Lone Star Solutions and Peel Country. Theresa's 2001 personal federal income tax return reported depreciation deductions for her personally owned rental real estate, depreciation associated with Peel Country, and depreciation deductions pursuant to I.R.C. § 179 (2000). Our review of the record reveals that Theresa may have taken additional depreciation deductions not otherwise reflected in the record on appeal.

John offered two proposed worksheets, both of which were received into evidence. The first proposed worksheet 1 calculated John's child support obligation to the two children of his current family at $1,006. The worksheet reflected his income and that of his current wife and reported deductions for federal and state income taxes and FICA. The worksheet also deducted from John's income $491 for "Child Support Previously Ordered" (presumably with respect to the two children from his first family). The second proposed worksheet 1 calculated John's child support obligation to the two children of his first family. This worksheet listed Theresa's monthly income and reported the same income and deductions for John as appeared on the first proposed worksheet 1, with one exception. The $491 for "Child Support Previously Ordered" appearing on the first proposed worksheet 1 was replaced with the calculated child support obligation of

$1,006. The second proposed worksheet calculated John's child support obligation at $522.80 for two children. Theresa's proposed worksheet 1 was not received into evidence on lack of foundation and hearsay grounds.

On June 4, 2002, the trial court issued a letter to counsel for the parties resolving the issues before it. With respect to Theresa's income, the court was not convinced that there had been a change upward or downward. Specifically, the court was not persuaded by Theresa's contention that she had sustained a significant reduction in income. Nor was the court persuaded by John's argument that depreciation, when added back in, would show a sizable increase in Theresa's income. Accordingly, for purposes of calculating child support, the trial court indicated it would rely on the finding in the previous modification decree and keep Theresa's monthly income at $5,200. The trial court found that John's income had increased substantially, but noted he was entitled to a deduction for support attributed to the two children of his second family. The court applied a three-step process to determine John's child support obligation to the children of his first family. It is helpful here to quote directly from the trial court's June 4 letter:

The first step is to calculate [John's] child support obligation as to his present family, recognizing there is no divorce in process. [John] and his wife live in the state of Texas and so the state income taxes should be added back in to their net income. In [the first proposed worksheet 1, John's counsel] allowed a deduction of $491 for child support previously ordered - in reality, this figure should be $675. When I round the figures off, the Child Support Guidelines show [John's] obligation for his present family to be the sum of $1,026.

Next, using the $5,200 per month as a net income for [Theresa], and a net income for [John] of $3,300 (a gross of approximately $6,035 with the deductions including the $1,026), [John's] support for two children of his first marriage would be $755 and, for one child, the sum of $520. This equates to a total support of four children in an approximate amount of $1,780. The last step is to apportion this between the two families. This would then require [John] to

pay the sum of $890 as child support for the two children of his first marriage.

The trial court issued its order on August 26, 2002, which repeated the terms of its June 4 letter and also added a provision ordering John to pay the modified child support commencing on June 1, 2002. Neither the June 4 letter nor the order included a completed worksheet 1. Theresa appealed, and John cross-appealed. We moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Theresa assigns, restated and renumbered, that the trial court erred by (1) failing to prepare and attach worksheet 1 to its findings or order; (2) incorrectly determining the amount of John's income when it used his 2001 income rather than his 2002 projected annual income; (3) incorrectly determining the amount of John's income by failing to take into account other income listed on John's 2001 W-2 wage and tax statement; (4) incorrectly determining the amount of her income and that it had not materially changed when it included a "one-time" capital gain she earned in 1999; (5) incorrectly crediting John twice for the children of his second family, resulting in substantially more support being provided to said children than for the children of his first family; and (6) failing to apply the modification of child support retroactively to the first day of the month following the filing date of the petition for modification.

John assigns, on cross-appeal, that the trial court erred by failing to add depreciation claimed on Theresa's federal income tax returns back to her taxable income for the purpose of calculating child support.

## STANDARD OF REVIEW

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Erica J. v. Dewitt*, 265 Neb. 728, 659 N.W.2d 315 (2003); *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002). A judicial abuse of discretion exists

when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Noonan v. Noonan,* 261 Neb. 552, 624 N.W.2d 314 (2001).

■ Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. See *Gallner v. Hoffman,* 264 Neb. 995, 653 N.W.2d 838 (2002).

## ANALYSIS

■ A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered. *Gammel v. Gammel,* 259 Neb. 738, 612 N.W.2d 207 (2000).

While several provisions of the Nebraska Child Support Guidelines relevant to the matters at issue in this lawsuit were amended effective September 1, 2002, we rely on those provisions of the guidelines in effect at the time the modification order was entered on August 26, 2002. Paragraph Q of the guidelines stated:

> Modification. Application of the child support guidelines which would result in a variation by 10 percent or more, upward or downward, of the current child support obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

### DEPRECIATION

John contends, on cross-appeal, that the trial court abused its discretion, depriving him of a just result. John claims the trial court failed to add depreciation claimed on Theresa's federal tax returns back to her income for purposes of calculating child support.

Theresa concedes in her brief that any depreciation associated with rental properties owned by her personally should be added back to her income for purposes of calculating her child support

obligation. Theresa contends, however, that depreciation reported on her federal tax returns related to her wholly owned S corporations should not be added back to her income because there is no evidence in the record that she is self-employed. Theresa appears to contend that merely holding an ownership interest in an S corporation does not render her "self-employed." Theresa also directs us to the Social Security Administration's definition of self-employed as someone who reports and pays taxes directly to the Internal Revenue Service rather than to an " 'employer.' " Reply brief for appellant at 6. See, also, Soc. Sec. Admin., Pub. No. 05-10022, If You're Self-Employed (Jan. 2003). She points out that the W-2 wage and tax statements she received in 1998 and 1999 from Gase Technologies and in 2001 from Lone Star Solutions indicate that Social Security and Medicare taxes were paid by the respective corporations on her behalf. Theresa maintains that these W-2's are evidence that she is an employee and not self-employed. Theresa further contends that the depreciation John seeks to have added back to her income belongs to the corporations and not to her. As such, Theresa argues that corporate depreciation cannot be added back to personal income without first piercing the corporate veil. We address this last contention first.

Subchapter S is a tax status designed to tax corporate income on a pass-through basis to shareholders of a small business corporation. I William H. Painter, Painter on Close Corporations § 1.10.1 (Theodore Rinehart & Albert E. Jenner, Jr., eds., 3d ed. 1999). "Since . . . a Subchapter S corporation is not taxed on its earnings, the various income, expense, loss, credit, and other tax items 'pass through' and . . . are taxable to or deductible by shareholders in a manner analogous to that which is applicable to partners." I Painter, *supra*, § 1.10.3 at 1:52. See, I.R.C. §§ 1361 to 1379 (2000); 1 F. Hodge O'Neal & Robert B. Thompson, O'Neal's Close Corporations § 2.06 (3d ed. 1998). Thus, although the corporations owned by Theresa are separate legal entities, because subchapter S was elected, their income and expenses for tax purposes are attributable to Theresa. Accordingly, it is not necessary for the corporations to be a party to this action nor is it necessary for us to "pierce the corporate veil" before making a finding that depreciation should be added back to income.

■ Paragraph D of the applicable version of the guidelines provides: "If a party is self-employed, depreciation claimed on tax returns should be added back to income or loss from the business or farm to arrive at an annualized total monthly income." Income for the purpose of child support is not synonymous with taxable income. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). Simply because "self-employed" may exclude from its definition for tax purposes someone like Theresa who is the sole shareholder of several S corporations, she is not necessarily excluded for purposes of calculating child support. The guidelines do not limit "self-employed" persons to sole proprietorships or partnerships. In *Glass v. Oeder*, 716 N.E.2d 413 (Ind. 1999), the court treated a shareholder of an S corporation as self-employed. In *Glass*, an action for modification of child support, the court stated: "We hold that the business expenses of a self-employed parent are to be considered in calculating income for purposes of child support, and income from a wholly-owned subchapter S corporation is to be treated the same as income from a sole proprietorship." 716 N.E.2d at 415. The court further held that "the shareholder of a wholly-owned subchapter S corporation is to be treated the same as a self-employed person operating the business." *Id.*

Likewise, several other jurisdictions have determined depreciation deductions associated with an S corporation must be considered in determining the parent's income for purposes of calculating child support. In *Thill v. Thill*, 26 S.W.3d 199 (Mo. App. 2000), a dissolution action, the Missouri Court of Appeals recognized that the trial court must consider, in its determination of income for purposes of calculating child support, reductions in income for depreciation and § 179 deductions taken by two S corporations. The court explained that because the two corporations at issue chose subchapter S status under the Internal Revenue Code, "they were taxable substantially as is done with a partnership. In that arrangement, no taxes are assessed at the corporate level but rather the income and losses (including depreciation) are passed through to the individual tax returns of the shareholders." 26 S.W.3d at 207. As such, the court continued, "[w]here complicated business and tax status applies, the partnership and Subchapter S income reflected on the individual's

tax return may not represent the true amount of cash or benefit that may be available to the parent and therefore, for the support of the child." *Id.* See, *Bass v. Bass,* 779 N.E.2d 582 (Ind. App. 2002) (holding that trial court did not abuse its discretion adding depreciation expense deduction back to father's income from S corporation); *Foster v. Foster,* 150 Ohio App. 3d 298, 780 N.E.2d 1041 (2002) (affirming lower court's order adding back to father's income his share of depreciation deduction taken by S corporation in which father owned 50-percent interest). See, also, *Grams v. Grams,* 9 Neb. App. 994, 624 N.W.2d 42 (2001) (requiring sole shareholder of S corporation to add depreciation back to income for purpose of calculating child support).

Based on the foregoing, we conclude that the owner of a wholly owned S corporation is self-employed within the meaning of the guidelines. Accordingly, under the guidelines, we determine that Theresa is self-employed. We have stated that the paramount concern and question in determining child support, whether in the initial marital dissolution action or in the proceedings for modification of decree, is the best interests of the child. *Peter v. Peter,* 262 Neb. 1017, 637 N.W.2d 865 (2002). To allow Theresa to reduce her income by the amount of depreciation deductions passed through to her from the wholly owned S corporations would work against the best interests of her children. Thus, all depreciation reported on Theresa's income tax returns for the years 1999 through 2001 and all depreciation from Theresa's wholly owned S corporations must be added back to her income in those respective years. This includes any deductions reported in those years pursuant to § 179. See *Gammel v. Gammel,* 259 Neb. 738, 612 N.W.2d 207 (2000) (for purpose of paragraph D of guidelines, deduction pursuant to § 179 is "depreciation" which should be added back to income or loss in calculating self-employed parent's average monthly income).

### Retirement Income

Theresa contends that the trial court erred by using John's 2001 income rather than a projected estimate of his 2002 income. Theresa contends, however, that if it was proper for the trial court to rely on John's 2001 income for purposes of calculating child support, the court did not properly calculate that income, because

the court failed to include John's elective deferrals to a retirement account. We affirm the trial court's use of John's 2001 income, but agree with Theresa that voluntary deferrals to a retirement account should have been added back to John's income.

The trial court assigned to John gross monthly income of approximately $6,035, which figure apparently derives from box No. 1 of John's 2001 W-2. Box No. 1, entitled "Wages, tips, other compensation," reports 2001 income of $72,441.20. Theresa contends it was improper for the trial court to rely on box No. 1 income without adding back to it income listed in box No. 12a. Box No. 12a of John's 2001 W-2 reads "D 9509.20." Theresa contends that the instructions on the back side of the W-2 indicate that the entry in box No. 12a of John's 2001 W-2 represents contributions to a voluntary retirement account, which contributions must be added back to income. The instructions portion of the 2001 W-2 wage and tax statement are not a part of the record on appeal.

We have stated that this court will take judicial notice of general rules and regulations established and published by Nebraska state agencies under authority of law. *City of Lincoln v. Central Platte NRD*, 263 Neb. 141, 638 N.W.2d 839 (2002); *Morrissey v. Department of Motor Vehicles*, 264 Neb. 456, 647 N.W.2d 644 (2002). Likewise, we will take judicial notice of rules and regulations established and published by federal agencies under authority of law. A review of the "2001 Instructions for Forms W-2 and W-3 Wage and Tax Statement and Transmittal of Wage and Tax Statements" leads us to conclude that $9,509.20 reported in box No. 12a, preceded by "Code D" of John's 2001 W-2, constitutes an elective deferral to either a 401K or a SIMPLE (savings incentive match plan for employees) retirement account from John's gross earnings.

Paragraph E of the applicable version of the guidelines, entitled "Deductions," provided in pertinent part: "The following deductions should be annualized to arrive at monthly net income: . . . (4) Mandatory Retirement. Individual contributions, in a minimum amount required by the plan." The guidelines do not, however, allow a deduction for contributions to retirement plans in excess of the minimum amount required by the plan for purposes of calculating child support. See *Workman v. Workman*, 262 Neb.

373, 632 N.W.2d 286 (2001). In *Workman*, we concluded that a self-employed father was entitled to deduct from his income minimum required payments made to a voluntarily established money purchase pension plan, where, once established, the father was required to contribute to the plan. Thus, while the decision to participate in a retirement plan may be voluntary in the first instance, where contributions made to the plan thereafter become mandatory, the minimum contribution required by the plan in effect at the time child support is calculated is deducted from income.

In the instant case, although John's contributions to a 401K or SIMPLE plan are characterized by federal regulation as an "elective deferral," the contributions may nonetheless be "mandatory" under the guidelines. Because the record on appeal does not reveal whether John's contributions were required by the retirement plan, we remand with directions to the district court to determine what portion, if any, of John's contributions was mandatory within the meaning of the guidelines. All sums which the trial court determines are "voluntary" contributions shall be added back to John's income. Theresa's W-2's in the record on appeal appear to reflect similar elective deferrals to retirement accounts in the amounts of $7,800 in 1999 and $2,799.94 in 2001. Because it is unclear whether we have a complete record on appeal, upon remand, the trial court should determine the amount of Theresa's elective deferrals to a retirement account. The trial court should then determine what portion, if any, of those deferrals are voluntary. Those deferrals that the trial court determines are voluntary should be added back to Theresa's income.

### AVERAGING THERESA'S INCOME

Theresa next contends the trial court erred by incorrectly determining the amount of her income and concluding that her income had not materially changed. Specifically, Theresa contends that because her income fluctuated between 1999 and 2001, the trial court should have averaged her income from the prior 3 years to establish her average monthly income, rather than relying on her income as determined during the prior modification hearing.

Paragraph D of the guidelines defines total monthly income as the income of both parties derived from all sources,

except all means-tested public assistance benefits and payments received for children of prior marriages. The fifth comment to worksheet 1 of the guidelines further provides that "[i]n the event of substantial fluctuations of annual earnings of either party during the immediate past 3 years, the income may be averaged to determine the percent contribution of each parent . . . ." Because we conclude depreciation must be added back to Theresa's income, based on the evidence in the record, we conclude that Theresa's income did experience significant fluctuations during the 3 years prior to the hearing. Accordingly, upon remand, we instruct the trial court to average Theresa's income from 1999 through 2001, adding back all depreciation deductions and contributions to voluntary retirement accounts.

## CONCLUSION

Having considered all of the parties' assignments of error, we affirm in part, and in part reverse and remand with directions as follows:

(1) We remand with respect to the trial court's findings as to the parties' incomes with directions to determine what portions, if any, of John's deferrals as set forth on his 2001 W-2 and Theresa's deferrals as set forth in the evidence were mandatory within the meaning of the guidelines. Such sums as the trial court finds are voluntary shall be added to that party's income for purposes of calculating child support obligations under the guidelines.

(2) We reverse the trial court's finding as to Theresa's income. We direct the trial court to average Theresa's income from 1999 through 2001. We further direct the trial court to determine Theresa's depreciation from both her personal holdings and the depreciation claimed by her from her wholly owned S corporations. The total of her personal depreciation and the depreciation from the wholly owned S corporations shall then be added to Theresa's income.

(3) The trial court shall determine the child support obligations of the parties pursuant to the guidelines, using the income figures as amended by the above directions as to deferred income, averaging of Theresa's income, and depreciation. The trial court shall prepare and submit worksheet 1 together with its findings.

In our de novo review, we determine that based upon the record in this case, Theresa's remaining assignments of error are without merit.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

STEPHAN, J., not participating.