RHONDA L. JAMESON, NOW KNOWN AS
RHONDA L. FLECKY, APPELLEE, V.
STEVEN J. JAMESON, APPELLANT.
700 N.W.2d 638

Filed July 5, 2005.   No. A-04-019.

Wesley S. Dodge for appellant.

David Riley for appellee.

IRWIN, CARLSON, and MOORE, Judges.

CARLSON, Judge.

## INTRODUCTION

Steven J. Jameson appeals from an order of the district court for Douglas County adopting the referee's recommendation to dismiss the application to modify the decree of dissolution filed by Rhonda L. Jameson, now known as Rhonda L. Flecky. We affirm.

## BACKGROUND

Steven and Rhonda were married on August 9, 1980, and their marriage was dissolved on October 28, 1991. The parties had four children during the course of their marriage: Jeremy Andrew, born February 26, 1981; Jonathan Patterson, born August 10, 1984; Jacob Daniel, born August 10, 1986; and Jordan Steven, born July 27, 1989. Rhonda was awarded custody of the minor children, and Steven was ordered to pay child support of $1,135 per month.

A modification order was entered on October 5, 1995, which changed custody of Jeremy from Rhonda to Steven and set Steven's child support obligation for the three remaining children in Rhonda's custody at $1,000 per month. The modification order provided that Steven's child support obligation would increase to $1,182 per month when Jeremy reached the age of majority. The modification order further provided that Steven's child support obligation would be $944 when there were two minor children remaining in Rhonda's custody and $608 when there was one minor child in Rhonda's custody.

Between October 1995 and May 2001, the parties entered into a series of informal agreements by which Steven's child support obligation was adjusted to account for increases in his income and for times when Jeremy resided with Rhonda and subsequently reached the age of majority. Each time the parties' adjusted the child support amount, Steven paid the agreed-upon amount to the clerk of the district court. The clerk's records of Steven's child support payments reflect that the amounts paid by Steven between 1995 and 2001 changed several times. The parties agree that each time Steven's obligation was changed, the new amount was based on the Nebraska Child Support Guidelines. However, the informal agreements were not presented to the court for modification of the decree.

Thus, the payment records of the clerk of the district court indicate that Steven had been overpaying his child support obligation and show that as of December 2001, Steven had a credit balance of $19,816.

Steven was terminated from his employment in January 2001, and he received a severance package that paid him his salary through May 2001. At the time Steven's employment was terminated and until his severance package ended in May, he was paying $1,530 per month in child support. In June 2001, Steven unilaterally began paying $500 per month in child support, without having any agreement with Rhonda. Steven continued to pay that amount up to the date of the hearing on Rhonda's application to modify.

On April 30, 2002, Rhonda filed in the district court an application to modify the decree alleging that Steven was delinquent in his child support payments and that Steven's unemployment constituted a substantial change of circumstances. Rhonda asked the district court to modify Steven's child support obligation and to calculate such obligation by "imputing to [Steven] an income commensurate with his level of education, skills, previous earnings, and experience." Rhonda further asked the court to order that the child support payment records be corrected to reflect both that Steven's child support obligation was paid current through June 2001 and that he was currently delinquent in the sum of $6,820.

Steven filed a response whereby he admitted that his unemployment constituted a material change in circumstances, such that his child support obligation should be reduced. A hearing was held before a district court referee on March 26, 2003.

Steven testified that he has a bachelor's degree in electronic engineering technology and a master's degree in electrical and computer engineering. He also testified that he was working toward a master's degree in business administration which he expected to complete in December 2003. Steven testified that at the time of the decree, his income was approximately $46,000, and that his income increased over the years such that he was earning approximately $105,000 when he was terminated in January 2001. Steven testified that he has had little income since his severance package ran out in May 2001 and that he was still

unemployed at the time of the hearing. Steven testified about the various efforts he was making to find a job in his field that would be comparable to his previous job. He testified that he thought $500 per month in child support would be a fair amount for him to pay, but he did not testify as to what amount of income or earning capacity this equates to or how he arrived at that amount of monthly support.

Rhonda testified that her annual income was approximately $6,000 at the time of the decree, that her annual income was $13,000 at the time of the hearing, and that she has never earned more than this amount. Rhonda testified that she did not know what Steven's earning capacity was but that she believed he could find a job, albeit at a lower salary than he was making when his employment was terminated. Rhonda apparently presented two child support worksheets using two different incomes for Steven, but the worksheets were received by the referee as only an aid, rather than as exhibits, and are not in the record before us.

The referee recommended that the district court enter an order dismissing Rhonda's application to modify, finding that there was no credible evidence presented of the parties' incomes that could be used to calculate child support in accordance with the Nebraska Child Support Guidelines. The referee further recommended that the district court find that the modification order of October 5, 1995, is the operative order regarding child support. The referee determined that between 1995 and 2001, Steven voluntarily elected to contribute child support beyond his legal obligation, and that he should not be given credit for such voluntary payments; nor should he be allowed to unilaterally modify the court-ordered obligation to offset such overpayments. Finally, the referee recommended that "all child support payments received by any payment center or office shall be credited only up to the extent of the ordered amount due at any applicable time" and that the district court should direct that all official payment records be adjusted accordingly.

Steven filed an exception to the recommendations of the referee. The district court overruled Steven's exception and adopted the referee's recommendations.

## ASSIGNMENTS OF ERROR

Steven assigns that the district court erred in (1) dismissing Rhonda's application to modify and (2) adopting the referee's recommendation that Steven was not entitled to any credit for his overpayments of child support.

## STANDARD OF REVIEW

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003); *Erica J. v. Dewitt*, 265 Neb. 728, 659 N.W.2d 315 (2003). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Gase v. Gase, supra*; *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001).

## ANALYSIS

Steven first assigns that the district court erred in dismissing Rhonda's application to modify. He argues that his unemployment constitutes a material change in circumstances such that his child support obligation should be modified. A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered. *Gase v. Gase, supra*; *Gammel v. Gammel*, 259 Neb. 738, 612 N.W.2d 207 (2000).

Rhonda's application to modify asserted that Steven's unemployment constituted a material change in circumstances, and Steven agreed in his response. Rhonda's application asked the court to recalculate Steven's child support obligation, based on his earning capacity. Under the Nebraska Child Support Guidelines, paragraph D, if applicable, earning capacity may be considered in lieu of a parent's actual, present income and may

include factors such as work history, education, occupational skills, and job opportunities. *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004); *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001).

The referee found that there was no credible evidence of the parties' incomes to use in recalculating child support. We agree. The only evidence regarding the parties' incomes was based solely on the testimony of the parties. The testimony consisted only of each party's income at the time of the decree, Rhonda's income at the time of the hearing, and Steven's income at the time he became unemployed. Neither party presented any supporting documentation as to actual earnings in past years. Further, neither party offered competent evidence to establish what amount of income should be imputed to Steven in recalculating child support. The evidence showed that Steven has been unemployed since January 2001 and that he was making approximately $105,000 when his employment was terminated, but there was no evidence by either party regarding what his earning capacity was at the time of the hearing or whether Steven's earning capacity has changed since the 1995 modification order. Accordingly, the district court did not abuse its discretion in dismissing Rhonda's application to modify, given the lack of evidence to establish Steven's earning capacity. Steven's first assignment of error is without merit.

Steven next assigns that the district court erred in adopting the referee's recommendation that Steven is not entitled to any credit for his overpayments of child support. Steven does not suggest that he should be given credit for the full $19,816 in overpayments as of December 2001. Rather, he argues that equity dictates that he is entitled to a setoff or credit to the extent that he should not have any child support arrearages as of the date of the district court's order. Steven began paying $500 per month in child support in June 2001 and continued to do so up to the date of the hearing. Each $500 payment was less than the court-ordered amount, based on the October 5, 1995, modification order. Steven argues that equity requires that his overpayments be credited against his payments in arrears.

Whether overpayments of child support should be credited retroactively against child support payments in arrears is a

question of law. *Palagi v. Palagi*, 10 Neb. App. 231, 627 N.W.2d 765 (2001). To the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the court below. *Griess v. Griess*, 9 Neb. App. 105, 608 N.W.2d 217 (2000).

In Nebraska, the general rule for support overpayment claims is that no credit is given for voluntary overpayments of child support, even if they are made under a mistaken belief that they are legally required. *Palagi v. Palagi, supra*; *Griess v. Griess, supra*. Our research reveals that the general rule in other jurisdictions also seems to be that no credit is given for voluntary overpayments of child support. See, *In re Marriage of Wassom*, 352 Ill. App. 3d 327, 815 N.E.2d 1251, 287 Ill. Dec. 448 (2004); *MacDonald v. Minton*, 142 S.W.3d 247 (Mo. App. 2004); *Pellar v Pellar*, 178 Mich. App. 29, 443 N.W.2d 427 (1989); *Haycraft v. Haycraft*, 176 Ind. App. 211, 375 N.E.2d 252 (1978). However, in *Griess v. Griess*, 9 Neb. App. at 115, 608 N.W.2d at 224, we recognized that "[e]xceptions are made to the 'no credit for voluntary overpayment rule' when the equities of the circumstances demand it and when allowing a credit will not work a hardship on the minor children."

In *Griess v. Griess, supra*, an obligor grossly and unwittingly overpaid child support by relying on inaccurate child support computations done by the obligee's lawyer and erroneously approved by the trial judge. In the instant case, based on informal agreements with Rhonda, Steven knowingly and voluntarily paid more than the court order obligated him to pay. The parties agree that the child support adjustments were based on the child support guidelines; thus, the agreed-upon amounts were not unreasonable. Further, in *Griess v. Griess, supra*, there was evidence that granting the obligor credit against his future child support payments would not work a hardship on the children. No such evidence exists in the present case. Equity does not require that Steven's payments above and beyond the amounts required by the October 5, 1995, modification order be credited against his child support arrears. Accordingly, Steven's second assignment of error is without merit.

Steven further contends that the referee's report and the district court's order are unclear as to where he stands in regard to his

child support payments. The district court's order states: "The Order of October 5, 1995, is controlling as to the parties and all child support payments received by any payment center or office shall be credited only up to the extent of the ordered amount due at any applicable time." Thus, the district court found that the October 5, 1995, modification order has been and continues to be the operative order in regard to child support. The court further ordered that the official child support payment records should credit Steven for the amount due at any applicable time pursuant to the October 5, 1995, modification order and should not reflect any amounts paid above and beyond the court-ordered amount at any applicable time. In addition, from June 2001 to the time of the hearing, Steven paid only $500 per month in child support, which was less than the court-ordered amount. Because Steven is not given any credit for his overpayment against his child support arrearages, Steven is in arrears beginning in June 2001 and for every month thereafter that he paid less than the court-ordered amount due at the applicable time. The child support payment records should reflect such monthly arrearages.

## CONCLUSION

We conclude that Steven's assignments of error are without merit. Accordingly, the judgment of the district court overruling Steven's exception to the recommendations of the referee and adopting such recommendations is affirmed.

AFFIRMED.