IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BELL V. MALCOM-BELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RODERICK J. BELL, APPELLANT,

V.

TAMMY S. MALCOM-BELL, APPELLEE

Filed June 29, 2021.    No. A-20-817.

Appeal from the District Court for Lincoln County: MICHAEL E. PICCOLO, Judge. Affirmed.

William J. Bianco, of Bianco Stroh, L.L.C., for appellant.

Claude E. Berreckman, Jr., of Berreckman & Bazata, P.C., L.L.O., for appellee.

RIEDMANN, BISHOP and ARTERBURN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Roderick J. Bell appeals from the dissolution decree issued by the district court for Lincoln County dissolving his marriage to Tammy S. Malcom-Bell, claiming the court abused its discretion in awarding Tammy alimony. We affirm.

STATEMENT OF FACTS

Roderick and Tammy were married on June 18, 2005. At the time, Roderick was living in North Platte, Nebraska, and Tammy was living in Lincoln, Nebraska. Tammy moved to North Platte in October. The couple had no children together. During the marriage, Roderick worked as a technician for the Federal Aviation Administration and was transferred to Kansas City during the divorce proceedings. His salary in 2019 was approximately $107,000.

Prior to the marriage, Tammy was employed as a child protective services worker for 8 years and then as a foster care social development worker in Lincoln. Just before Tammy moved

to North Platte, she was finishing an internship for her master's program as a mental health counselor. When she moved to North Platte, she intended to continue with her internship in the new location. However, that required a physician in North Platte to authorize the program and Tammy was unable to find one to do so. Consequently, she could not continue with the internship. Instead, she began working part time for Lutheran Family Services and was paid at the rate of either $20 or $25 per hour for approximately 3 years.

Tammy then began working at Magellan Health Services, where she received a salary of roughly $50,000 and benefits. She worked in that position for approximately 8½ years. On December 31, 2016, the company closed, and Tammy received a 4-month severance package; after the severance package ended, she began receiving unemployment benefits. She also completed her remaining requirements to obtain her provisional license for drug and alcohol counseling, at which time she was hired to work 29 hours per week as a counselor without benefits. However, because Roderick was employed by the federal government, Tammy was able to join his benefit plan.

In 2018, Tammy's employer offered her a full-time counselor position, which she declined. Tammy testified that at that time, she and Roderick were involved in numerous volunteer activities and she was "completely overwhelmed." Roderick, however, testified that the parties never agreed that Tammy should maintain less than full-time employment and that he wanted her to work full time, although he never expressed that to her.

During the marriage the couple purchased a trailer home outright. The parties maintained separate bank accounts and paid their bills based on percentages of their incomes. Roderick supported Tammy by paying most of her share of the household bills while she completed her certificate requirements.

Roderick filed for divorce in December 2018. At the time of Roderick's filing, Tammy remained employed working a three-quarter time position. In March 2019, Tammy began working full time as a counselor.

Tammy presented paystubs at trial proving that her monthly net pay was $2,943.87. However, her monthly expenses totaled $4,331.80 for items and services including but not limited to her vehicle, professional licensures, attorney fees, pet care, income tax, loan payments, cell phone, donations, credit card payments, and groceries. Tammy testified that Roderick paid for most of the expenses incurred during the marriage. She also explained that because she had previously been on Roderick's health insurance plan, after the divorce, she would have to pay for her own health, vision, and dental insurance. Tammy currently lives in the marital trailer home without a payment other than the lot rent and utilities.

In its decree, the district court considered Tammy's changing employment situations during the marriage, her obtaining a provisional license as a drug and alcohol counselor, and her decision to remain a part-time employee until after the parties' separation. Ultimately, in relevant part, the court ordered Roderick to pay Tammy $750 per month in alimony for 48 consecutive months, to terminate upon the death of either party or Tammy's remarriage. Roderick appeals.

ASSIGNMENT OF ERROR

Roderick solely assigns that the district court abused its discretion in awarding Tammy alimony.

## STANDARD OF REVIEW

On appeal, an alimony award will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. *Ziebarth v. Ziebarth*, 238 Neb. 545, 471 N.W.2d 450 (1991). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003).

## ANALYSIS

Roderick assigns that the district court abused its discretion in awarding Tammy alimony. In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004). In addition, a court should consider the income and earning capacity of each party and the general equities of the situation. *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019). Alimony is not a tool to equalize the parties' income, but a disparity of income or potential income might partially justify an alimony award. *Id.*

Alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.* In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Hosack v. Hosack, supra*. In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id.* An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Dooling v. Dooling, supra*.

Roderick argues that the district court erred by using alimony to equalize Roderick and Tammy's income. However, the district court did not abuse its discretion by utilizing the disparity of income to partially justify its award. See *id.* The district court found a distinct disparity between Roderick and Tammy's income; Roderick earns approximately $107,000 annually in addition to his $428.83 monthly disability compensation from the veteran's administration, while Tammy earns $42,244 annually and has no other income. Tammy testified and provided evidence that indicated she would be unable to afford her monthly expenses after the dissolution, as she would then need to pay for her own healthcare in addition to utilities and personal care costs, which she and Roderick had divided according to their individual incomes while married.

Additionally, the $750 that Roderick must pay in alimony does not equalize the incomes of the parties; Roderick earns approximately $65,000 more than Tammy per year, and a $9,000 yearly alimony award ($750/month × 12 months) does not equalize the incomes of the parties. As to the award of alimony, we do not find the district court's order patently unfair; therefore, we find no abuse of discretion by the district court in relying in part on the parties' disparate income. See *id.*

The parties were married for approximately 13½ years. Roderick argues that the duration of the marriage should not be used to justify alimony because the parties kept their finances separate throughout the course of the marriage; however, the duration of the marriage is one of the four factors a court may consider when determining whether alimony is appropriate. See *Hosack v. Hosack, supra*. Furthermore, the evidence reveals that although the parties kept their finances separate, expenses were covered by the parties proportionately based on their incomes. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id*. Here, given the fact that Tammy was reliant upon Roderick's larger contribution to the family expenses for the duration of the marriage, the separation of finances is irrelevant. By utilizing this factor, the court did not abuse its discretion.

Roderick next argues that the district court utilized inflated monthly expenses to award alimony. Specifically, Roderick claims that Tammy listed her monthly expenses as $1,051.56 on her interrogatories prior to trial, while at trial she presented evidence of $4,300 monthly expenses. Tammy explained at trial that she prepared her calculation of expenses by going through the receipts and bills from her check registers and that she did so for the period of August 1, 2019, through July 31, 2020, in preparation for trial. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Edwards v. Edwards*, 16 Neb. App. 297, 744 N.W.2d 243 (2008). Therefore, because the district court had access to both Tammy's interrogatory response and her evidence presented of the increased monthly expenses, the district court was able to weigh the validity of both documents. Therefore, we do not disturb that finding.

Finally, Roderick argues that the division of property benefits Tammy and that therefore, the district court should not have awarded alimony. However, this argument is misguided. Per Neb. Rev. Stat. § 42-365 (Reissue 2016), division of marital property and alimony

> serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

Although alimony and distribution of property have different purposes in marriage dissolution proceedings, they are closely related and circumstances may require that they be considered together. *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993). Here, the court determined that the value of the marital estate was approximately $300,000, the bulk of which was contained in Roderick's life insurance and retirement plans. The court divided the marital estate evenly, requiring Roderick to make an equalization payment of approximately $120,000 to Tammy from his retirement plan. He assigns no error to the court's order regarding the property division.

We find nothing within the property division ordered by the court which would detract from an award of alimony. As stated above, the purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances require

it. Here, considering the factors set forth in *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004), we find no abuse of discretion in the alimony award of $750 per month for 48 months.

CONCLUSION

For the aforementioned reasons, we affirm the decision of the district court.

AFFIRMED.