KRISTIN J. GRIESS, NOW KNOWN AS KRISTIN J. SWANSON, APPELLEE, V. BRYAN GRIESS, APPELLANT.

608 N.W.2d 217

Filed April 4, 2000. No. A-98-1259.

Douglas Pauley, of Conway, Pauley & Johnson, P.C., for appellant.

Gregory C. Damman and Joseph H. Murray, of Germer, Murray & Johnson, for appellee.

SIEVERS and INBODY, Judges, and BUCKLEY, District Judge, Retired.

SIEVERS, Judge.

This case stems from a child support order entered by the district court for Fillmore County in August 1996, which was admittedly incorrect and substantially so. Bryan Griess paid child support pursuant to this order until April 1998, and it is essentially undisputed that he has paid $18,922 more in child support than the Nebraska Child Support Guidelines would have required during those 20 months. Bryan filed an application to modify the child support order and to secure credit for the overpayment. Although finding that the amount of child support ordered in 1996 was incorrect by over $900 per month, the trial court denied his request for a credit. Bryan has appealed.

## BACKGROUND

Bryan and Kristin J. Griess were divorced pursuant to a decree filed in the district court for Fillmore County on July 23, 1986. The Greisses had four children: Jami, Zachary, Cajun, and Nick. The original decree provided that Kristin would have the custody of the children and that Bryan would pay $300 per month in child support. In 1993, Jami's physical custody was changed from Kristin to Bryan, and Bryan's child support obligation was increased to $410 per month due to his increased income.

Zachary also began living with Bryan in August 1995. An order was entered on September 3, 1996, "officially" allowing Zachary to reside with Bryan. At the hearing on that matter, the parties stipulated on the record that "child support will be based under the guidelines promulgated by the Supreme Court on the basis of each of these parties having two minor children living with them." The parties agreed to reduce the calculations and sums to a written stipulation and order. Kristin's former attorney originally miscalculated the child support amount included in the modification order in 1996. At trial, Kristin testified that when she reviewed the draft stipulation with her former attorney and asked why the support had increased so much, he responded that the parties' "incomes had gone up, that the Supreme Court guidelines had increased, and that that was the calculation." Kristin's former attorney forwarded the proposed stipulation and calculation to Bryan's former attorney, who was to approve

it. Kristin's former attorney, apparently after no response from Bryan's former attorney, sent the proposed order to the district judge, Orville L. Coady, who signed and entered it without checking the accuracy of the child support calculations against the child support guidelines.

Pursuant to this "stipulation," the court increased Bryan's child support to $1,348 per month for the support of Cajun and Nick commencing on September 1, 1996. Also pursuant to a stipulation by the parties, the court granted Bryan a $136 per month credit from September 1, 1996, to June 1997, for the time that Zachary had already lived with Bryan, making Bryan's child support payments for those months $1,212. He was ordered to pay $1,288 in both July and August 1997, then $1,424 per month thereafter. Bryan did not learn of the increased amount of child support until 2 months later, when he saw it deducted from his paychecks through wage withholding. The calculation was erroneous because it was not based on each parent's having custody of two children; instead, it was calculated as if Kristin had custody of all four of the parties' children. Bryan did contact his former attorney at that time to question the high amount. His former attorney "recalculated" the amount and informed Bryan that it was correct, and Bryan continued to pay the amount ordered by the court.

In October 1997, Bryan contacted another attorney, who recalculated the amount and determined that Bryan had been paying much more than what the guidelines would require. Bryan filed an application for modification shortly thereafter on November 27, 1997. On April 14, 1998, a hearing was held regarding Bryan's application to modify. The district court reduced Bryan's child support obligation from $1,424 to $517 per month commencing May 1, 1998. The court also specifically found that the child support calculation made in August 1996 was incorrect and did not conform to the guidelines, but declined to rule further on the issue of credit at that time.

Another hearing was held in June 1998 to address the over-payment issue and Kristin's proposed move to Grandby, Colorado, a matter not at issue here. At that hearing, Kristin testified as follows regarding her use of the child support money she received from Bryan:

Q. If the Court were to give Mr. Griess a credit against his future child support obligation, and that credit amounted to approximately $318 per month, which would reduce his obligation from the current amount of $517 to approximately $199 . . . would you still be able to provide for yourself, your two boys, after this move to Grandby?

A. Of course.

Q. So as far as the child support amount received from Mr. Griess, that's not real relevant as far as providing for the boys, in your budget plan?

A. We have never budgeted for the child support payment, to help raise the children.

After the June hearing, the court entered a "Memorandum Finding" on October 30, 1998, declining to give Bryan any relief for the overpayments of child support that he had made. Bryan timely appealed.

## ASSIGNMENTS OF ERROR

Using a number of legal and equitable theories, Bryan asserts that the district court should have granted him a credit toward his future child support obligation in the amount of $18,922 plus interest, which he asserts is equal to the child support that he has overpaid as a result of an incorrect child support calculation made in August 1996.

## STANDARD OF REVIEW

The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999); *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991); *Hanthorn v. Hanthorn*, 236 Neb. 225, 460 N.W.2d 650 (1990).

Whether overpayments of child support should be credited against future child support is a question of law. See *Gress, supra.* To the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the court below. *Id.*; *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). We note that the Supreme Court has recently said that the correct standard of

review for a trial court's exercise of equity jurisdiction is de novo on the record with independent conclusions of fact and law. *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000).

## ANALYSIS

A situation involving the substantial overpayment of child support due to an obviously incorrect calculation and court order has not been addressed by the appellate courts of Nebraska. Kristin does not dispute that Bryan was ordered to pay child support in excess of the guidelines. The overpayment is determined as follows:

| | Amount Bryan Ordered to Pay | *Amount He Actually Paid | **Amount He Should Have Paid |
|---|---|---|---|
| 9/1/96 through 6/1/97 | ($1,212 x 10) = $12,120 | $11,684 | ($96 x 10) = $960 |
| 7/1/97 | $1,288 | $1,348 | $432 |
| ***8/1/97 | $644 | $674 | $148 |
| 9/1/97 | $1,424 | $1,348 | $432 |
| 10/1/97 through 4/1/98 | ($1,424 x 7) = $9,968 | $9,816 | ($568 x 7) = $3,976 |
| Totals | $25,444 | $24,870 | $5,948 |

*Taken from the "Case Transaction History Report" of the Fillmore County District Court.

**Calculated pursuant to the Nebraska Child Support Guidelines based on income stated on 1996 calculation.

***Bryan was required to pay only half of $1,288 for August, because the children were with him for summer visitation.

Thus, the difference between what Bryan should have paid ($5,948) and what he actually paid ($24,870) is $18,922.

■ The stated principle behind the child support guidelines "is to recognize the equal duty of both parents to contribute to the support of their children." Nebraska Child Support Guidelines, paragraph A. Paragraph C of the guidelines is applied as a rebuttable presumption and provides in part:

> All orders for child support obligations *shall* be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. All stipulated agreements for child support must be reviewed against the guidelines and,

if a deviation exists and is approved by the court, specific findings giving the reason for the deviation must be made. (Emphasis supplied.)

The lower court has acknowledged its failure to follow the guidelines and the mandated procedure quoted above. The court stated in its journal entry filed April 28, 1998, that "[t]he Court specifically finds that the split custody calculation as attached to the order dated August 19, 1996 was incorrect in its computation causing an overstatement in the amount of child support due and owing by the Respondent to the Petitioner." At the time of this journal entry, the court declined to rule on the matter of a credit, but after another hearing, the court, in its "Memorandum Finding," filed October 30, 1998, declined to give Bryan any relief, although stating that the trial court "was never aware or attempted to calculate the form as it should have been." We take this as an admission that the court did not check the figures and calculation presented to it by Kristin's former attorney, nor did it do its own child support worksheet.

■ The overpayment is undisputed, and the trial court's error has been admitted. The question is whether Bryan is entitled to any relief. A litigant seeking the vacation or modification of a prior decree or judgment after the term may take one of two routes: under Neb. Rev. Stat. § 25-2001 (Cum. Supp. 1998) or under the district court's independent equity jurisdiction. *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995). See *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000). We first consider § 25-2001.

*Applicability of § 25-2001(3).*

■ Section 25-2001 provides that "[a] district court shall have power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made . . . (3) for mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order." The first part of subsection (3) of this section, providing that a judgment may be vacated "for mistake, neglect, or omission of the clerk," clearly has no application here. The second part of subsection (3), dealing with "irregularity in obtaining a judgment or order," refers to judgments or orders rendered contrary to the course of law and the practice of the courts.

■ *Paine v. United States Nat. Bank of Omaha*, 199 Neb. 248, 257 N.W.2d 826 (1977), considered the scope of § 25-2001 and the concept of "irregularity in obtaining a judgment or order." The court said that even if, as contended by the appellant, the trial court overlooked a provision in the will which would make a difference in the result, a judgment was entered, no appeal was taken, and the judgment was final. Thus, this was not the type of mistake or irregularity embraced within the ambit of § 25-2001. *Paine, supra.* In *State ex rel. Ward v. Pape*, 237 Neb. 283, 465 N.W.2d 760 (1991), a putative father moved to vacate a paternity judgment on the ground that a Supreme Court decision mandating appointment of counsel for indigents in paternity actions should be applied retroactively. The court in *State ex rel. Ward* cited back to *Paine*, saying that it is clear that the "irregularity" provision of § 25-2001 did not apply to errors of law or judicial acts. Therefore, we must conclude that the entry of an order for payment of child support is a judicial act which is excluded from the reach of § 25-2001. We note that fraud of counsel is a basis for relief under subsection (4) of § 25-2001, but there is no claim of fraud by Kristin's former attorney. Thus, Bryan's claim that § 25-2001 should apply is rejected.

*Equitable Power of Court.*
■ Bryan argues that even if § 25-2001 does not apply in this case, the district court should have invoked its equitable powers to provide him relief. In Nebraska, dissolution of marriage cases and proceedings for modification of the decree are equitable in nature. *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991); *Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615 (1985).
■ As we said above, the statutory grounds for vacating a judgment after term under § 25-2001 are not exclusive, but exist concurrently with independent equity jurisdiction. Thus, even though the statutory grounds for modifying or vacating a judgment after term are inapplicable to this case, Bryan may seek relief via the court's equity jurisdiction. A court of equity which has obtained jurisdiction for any purpose may retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject matter. *Daugherty v. Ashton*

*Feed and Grain Co., Inc.*, 208 Neb. 159, 303 N.W.2d 64 (1981); *Hull v. Bahensky*, 196 Neb. 648, 244 N.W.2d 293 (1976).

 It has been a longstanding rule in Nebraska that child support payments become a vested right of the payee in a dissolution action as they accrue. *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999); *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991). While a past-due child support arrearage is already accrued and vested, a future payment is not. *Gress, supra.* A court may, therefore, modify the amount of child support due in the future but may generally not forgive or modify past-due child support. *Id.* However, Nebraska appellate courts have allowed the granting of a credit against a child support arrearage under limited circumstances. For example, in *Berg, supra*, the court held that it was proper to allow the father a credit against his child support arrearage for child-care expenses he incurred while two of the parties' four children for whom he was paying child support were living with him. See, also, *Contra Costa Cty. ex rel. Petersen v. Petersen*, 234 Neb. 418, 451 N.W.2d 390 (1990); *Redfield v. Redfield*, 6 Neb. App. 274, 572 N.W.2d 422 (1997).

The facts here are analogous to those of *Berg, supra*, because two of the parties' four children were living with Bryan, but he was paying child support to Kristin based on a child support calculation that he pay for all four children. In contrast to *Berg*, Bryan does not have an arrearage against which to set off future payments. Thus, "balancing the books" becomes more complicated, but that is not determinative when equitable relief is under consideration. Bryan asks for a setoff or credit against his future child support payments.

Because there is no reported Nebraska case like this, we proceed by what we see as analogous situations. In *Hanthorn v. Hanthorn*, 236 Neb. 225, 460 N.W.2d 650 (1990), the Supreme Court held that Social Security payments made to a parent's children on account of the parent's disability should be considered as credits toward the parent's court-ordered support obligation, in the absence of circumstances making the allowance of such a credit inequitable. The court in *Hanthorn* stated that the Social Security payments may satisfy the parent's court-ordered child support only on a month-to-month basis. Likewise, in *Brewer v. Brewer*, 244 Neb. 731, 509 N.W.2d 10 (1993), the

court explained that Social Security dependency benefits are not a mere gratuity from the federal government, but, rather, have been earned in part through an employee's payment of Social Security taxes. A request to credit Social Security benefits made on behalf of a deceased parent was deemed only a request for a change in the source of payment, which does not require a modification hearing, but only an opportunity for the custodial parent to adduce evidence of any inequity that might occur as the result of crediting those benefits to court-ordered child support. *Id.*, citing *Board v. Board*, 690 S.W.2d 380 (Ky. 1985) (holding that crediting of Social Security payments is not modification of decree). Our conclusion from these cases is that the baseline consideration is what is equitable or fair.

We recognize that the payments at issue were not "voluntary" or "extra" payments because they were in compliance with the obligation imposed by the court's order, albeit a flawed order. Nonetheless, we think that cases involving voluntary payments above and beyond the court-ordered payments provide some help in this obviously murky situation. The general rule appears to be that no credit is given for voluntary overpayments of child support, even if they are made under a mistaken belief that they are legally required. The principle behind this rule is that such a credit would be tantamount to allowing one party to unilaterally modify the decree which could result in the deprivation of future support benefits. See, *In re Marriage of Rogers*, 283 Ill. App. 3d 719, 670 N.E.2d 1154, 219 Ill. Dec. 266 (1996); *Finley v. Morrow*, 697 S.W.2d 543 (Mo. App. 1985); *Goodson v. Goodson*, 32 N.C. App. 76, 231 S.E.2d 178 (1977); *Raczynski v. Raczynski*, 558 P.2d 425 (Okla. App. 1976). See, generally, 24A Am. Jur. 2d *Divorce and Separation* § 1067 (1998); Annot., 47 A.L.R.3d 1031 (1973).

"Voluntary overpayments" have included many items that were not ordered by a court via the parties' decree. See, *Ardizzone v. Bailey*, 542 A.2d 806 (Del. Fam. 1987) (travel expenses); *Onley v. Onley*, 540 So. 2d 880 (Fla. App. 1989) (automobile purchased for child); *Henderson v. Henderson*, 166 Ga. App. 412, 304 S.E.2d 517 (1983) (tuition or educational expenses); *Harner v. Harner*, 105 Ill. App. 3d 430, 434 N.E.2d 465, 61 Ill. Dec. 312 (1982) (continued child support payments

under mistaken belief that payments were required after child reached majority); *Whitman v. Whitman*, 405 N.E.2d 608 (Ind. App. 1980) (clothing, gifts, food, entertainment); *Finley v. Morrow*, 697 S.W.2d 543 (Mo. App. 1985) (erroneous interpretation or recollection of terms of contract for child support approved by court). But, we could not find a reported case where the payments at issue were not voluntary because they were made pursuant to a court order, albeit a grossly incorrect order, and made as a result of the trial court's failure to perform its duty with respect to the entry of such order.

Exceptions are made to the "no credit for voluntary overpayment rule" when the equities of the circumstances demand it and when allowing a credit will not work a hardship on the minor children. See, *State ex rel. DHR v. Scott*, 637 So. 2d 892 (Ala. App. 1994); *In re Marriage of Rogers, supra*; *Finley, supra*; *Goodson, supra*; *Raczynski, supra*. See, generally, 24A Am. Jur. 2d, *supra*, § 1068.

We find that the exception to the rule is applicable to the situation at hand. Both parties' attorneys in the original modification action had a hand in producing the erroneous calculation of child support. It appears that Kristin's former attorney produced the original calculation, which Bryan's former attorney either overlooked, ignored, or implicitly approved by inaction. Although Bryan questioned the amount, he was assured by his former attorney that it was correct. The trial judge failed to check the figures submitted to him. Bryan paid the court-ordered sum for 20 months and was not delinquent. When Bryan contacted a different attorney some time later and was told that the child support figure was wrong, he filed an application for modification.

The fact that Bryan's former attorney failed to ensure that Bryan was ordered to pay only the proper amount of child support gives us considerable pause in assessing Bryan's request for relief. This is because the general rule is that equitable relief is not available when the party seeking relief has an adequate remedy at law. *Ganser v. County of Lancaster*, 215 Neb. 313, 338 N.W.2d 609 (1983). However, it is generally recognized:

Equity jurisdiction is not precluded by a legal remedy unless the latter is clear and certain, and the remedy at law,

in order to be considered adequate, must be obtainable as of right. The mere existence of a possible remedy at law is not sufficient to warrant the denial of equitable relief.

27A Am. Jur. 2d *Equity* § 39 at 545-46 (1996).

Although Bryan may have a potential remedy at law against his former attorney, we are unable to ignore the fact that the trial judge wrongfully entered a child support order, which was obviously grossly incorrect. To do so, and leave Bryan with only a potential malpractice claim against his former attorney, would convey the impression that we are protecting one of our judicial brethren, notwithstanding that the facts cry out for equitable relief. Paragraph C of the child support guidelines instructs that all orders for child support obligations shall be established in accordance with the provisions of the guidelines, see *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999), absent an express finding by the trial court that one or both of the parties have rebutted the presumption that the guidelines apply, *Polly v. Polly*, 1 Neb. App. 121, 487 N.W.2d 558 (1992). There was no such finding here and no reason for the court to enter an order which was so obviously wrong. Accordingly, we conclude that equitable relief is appropriate.

We must determine if allowing a credit will work a hardship on the minor children. At trial, Kristin testified to the effect that she could take care of the children if the monthly child support payments were reduced to only $199 and that she has "never budgeted for the child support payment, to help raise the children." From Kristin's testimony, there is clear evidence that granting Bryan some sort of credit against his future child support payments will not work a hardship on the children in Kristin's custody.

*Equitable Relief.*

 Under our de novo review of the trial court's decision not to use its equitable powers to grant Bryan relief, see *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000), we find that Bryan should receive relief from the erroneous child support calculation. We still must decide the appropriate relief in this situation. "[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon*

*v. Kurtzman*, 411 U.S. 192, 200, 93 S. Ct. 1463, 36 L. Ed. 2d 151 (1973). In *Janke v. Chace*, 1 Neb. App. 114, 487 N.W.2d 301 (1992), we also said that where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. In the present case, we must strike an appropriate balance between Bryan's rights, Kristin's rights, and the needs of the children in Kristin's custody.

It would not be fair or feasible to require Kristin to return payments already made, which leaves us with only the option of a credit against future payments. We note that Bryan's child support obligation will end after his September 1, 2003, payment, when Nick, the parties' youngest child, reaches the age of 19. Thus, there are approximately 40 months of support to be paid, depending on the precise date of our mandate (which we cannot now know for certain). Therefore, we order that Bryan receive a credit of $517 per month, beginning with the first payment due after our mandate is issued until Bryan has been credited the $18,922 he has made in excess payments—a period of 37 months. Should it be later determined in a modification proceeding that Bryan's child support should exceed $517 per month, his monthly credit shall not exceed $517 for 37 months. Additionally, in keeping with the notion from *Janke, supra,* that equity crafts the necessary remedy, we also direct that if Bryan obtains any civil recovery from his former attorney, the amount of such recovery shall be offset on a monthly pro rata basis against any of the unaccrued monthly credit which we have provided for herein.

We reverse, and remand the matter to the district court for the entry of an order modifying the decree in accordance with our opinion and for such further orders as may be necessary if Bryan obtains any recovery from his former attorney. By mentioning the potential of Bryan's obtaining civil relief from his former attorney, we emphasize that we do not intend to imply anything about the merits of any such claim, a matter which is not before us for decision, but which is nonetheless relevant in considering the appropriate relief in the instant case.

REVERSED AND REMANDED WITH DIRECTIONS.