Davis recanted the next day. At trial, Logemann also recalled a conversation he had with Davis several days after the murders about the possibility of a gun being left at the scene. Logemann testified that Davis was concerned that through DNA evidence, investigators would be able to link the gun to Davis as the shooter. The .40-caliber semiautomatic pistol abandoned at the site of the murders was consistent with bullets recovered from the scene.

The prosecution presented a significant amount of evidence to establish Davis' involvement at every step, from the planning stage of the robbery to the actual robbery attempt and murders, to disposing of one of the murder weapons, and to Davis' incriminating statements after the murders occurred. The evidence was sufficient such that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could find that Davis was guilty of all charges beyond a reasonable doubt.

Davis' second assignment of error is without merit.

## VI. CONCLUSION
We affirm Davis' convictions and sentences.

Affirmed.

—————————

Elizabeth Grant Johnson, now known as Elizabeth D'Allura, appellant and cross-appellee, v. Kari Johnson, appellee and cross-appellant.

___ N.W.2d ___

Filed May 15, 2015.    No. S-13-775.

1. **Modification of Decree: Child Support: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. The same standard applies to the modification of child support.

2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the court below.

3. **Rules of the Supreme Court: Child Support.** In general, child support payments should be set according to the Nebraska Child Support Guidelines.

4. **Child Support.** Use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned.

5. **Child Support: Evidence.** Generally, earning capacity should be used to determine a child support obligation only when there is evidence that the parent can realize that capacity through reasonable efforts.

6. **Social Security.** Social Security benefits are not a mere gratuity from the federal government but have been earned through an employee's payment of Social Security taxes.

7. **Child Support: Appeal and Error.** Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and an appellate court will affirm its decision absent an abuse of discretion.

8. **Modification of Decree: Child Support.** In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances.

9. **Modification of Decree: Child Support: Time.** Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification.

10. **Modification of Decree: Child Support.** In modification of child support proceedings, the children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay.

11. **Child Support.** The general rule is that no credit is given for voluntary overpayments of child support, even if they are made under a mistaken belief that they are legally required.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Irwin and Pirtle, Judges, on appeal thereto from the District Court for Douglas County, Shelly R. Stratman, Judge. Judgment of Court of Appeals affirmed in part and in part reversed, and cause remanded with directions.

Rodney C. Dahlquist, Jr., and Christine A. Lustgarten, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Virginia A. Albers, of Slowiaczek, Albers & Astley, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

Kari Johnson filed a petition for further review of the Nebraska Court of Appeals' decision which affirmed in part

and reversed in part the order of the district court for Douglas County which modified his child support obligation. We conclude that (1) the Court of Appeals correctly determined that the district court erred when it imputed to Elizabeth Grant Johnson, now known as Elizabeth D'Allura, a wage-earning capacity of $52,000 per year and reversed the order and remanded the cause for a hearing on Elizabeth's wage-earning capacity, (2) the Court of Appeals did not err when it affirmed the district court's conclusion that the Social Security benefits paid to the children were a gratuity and that Kari should not be given a credit for them upon remand, and (3) although the Court of Appeals correctly affirmed the district court's decisions that a downward modification in Kari's child support could be retroactive to the month after the filing of the application to modify, that the judgment against Elizabeth for $25,472.11 should be reversed, and that a judgment against Elizabeth for $2,357.90 should be entered, it erred when it reasoned that upon remand, Kari could not receive credit for overpayments, if any, made during the pendency of the modification proceedings for the reason that Kari had continued to pay the $3,000-per-month child support ordered in the original decree. To the contrary, the fact that Kari continued to pay what had been ordered does not preclude consideration of a potential credit after receipt of additional evidence upon remand. Accordingly, we affirm in part, and in part reverse and remand with directions.

## II. STATEMENT OF FACTS

Kari and Elizabeth were married in 1996. Two children were born to the marriage: one born in May 1995 and one born in July 1998. Kari and Elizabeth were divorced in January 2010, when the district court entered a stipulated decree and parenting plan. The dissolution decree, inter alia, provided for joint legal custody of the children and awarded physical custody to Elizabeth. Per the stipulation, the decree required Kari to pay child support of $3,000 per month while both children were minors and $1,500 per month when only the younger child was a minor.

Approximately 6 months after entry of the decree of dissolution, Kari moved for an order nunc pro tunc, in which motion he asserted that the dissolution court was not aware of the Social Security payments the children were receiving and that had the dissolution court been aware of the Social Security benefits, Kari "would be responsible for far less than the $3,000" monthly amount of child support. Kari later withdrew the motion, and thus the dissolution court never entertained it.

At the January 2013 modification trial which gives rise to this appeal, Kari acknowledged that when he stipulated to the terms of the original decree, filed on January 10, 2010, he understood that the children were receiving Social Security benefits by virtue of his status as a retired taxpayer. He acknowledged that the receipt of the Social Security benefits was in addition to his obligations for child support and alimony. The record shows that the children received Social Security benefits in 2010, 2011, and part of 2012.

Nine months after the decree of dissolution was entered, Kari moved to vacate the decree, asserting that the decree was void because the district court lacked personal jurisdiction over him. We affirmed the district court's order denying the motion to vacate the decree of dissolution. *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011). At the modification trial, Kari testified that he pursued the personal jurisdiction issue rather than first applying for a modification, because he wanted a "do-over" and to have the entire decree overturned.

In September 2011, Kari filed an application to modify the decree, in which he sought to be awarded physical custody based on the children's preference and to have child support recalculated accordingly. Elizabeth filed a cross-application in which she sought sole legal custody based on Kari's uncooperative behavior and his failure to pay his share of medical bills and to maintain his life insurance. Kari thereafter amended his application to allege that in the event physical custody remained with Elizabeth, his child support obligation should be modified downward because he had experienced a decrease in income which constituted a material change in

circumstances. The parties ultimately stipulated to a modification of physical custody to a joint physical (as well as legal) custody arrangement.

In January 2013, trial was eventually held on the issue of appropriate modification of child support. A review of the supplemental transcript shows that during the pendency of Kari's motion to modify which had been filed in September 2011, a trial was set for April 10, 2012; the parties "settled" the matter, but after the trial date had passed, Elizabeth repudiated the settlement. On September 6, Kari sought temporary abatement of child support. And on October 19, 2012, Kari filed an additional motion for temporary adjustment of child support and a motion for credit. Elizabeth successfully sought continuance of Kari's temporary motions to adjust or credit child support. Specifically, the district court ordered that Kari's motions for abatement or credit of child support were to be addressed at trial. The trial was set for January 2013. The judge who heard the modification matter was not the judge who entered the decree.

At the time of trial, Kari was 69 years old and Elizabeth was 47 years old. Both parties testified that Elizabeth had remained in the family home because they wanted to maintain stability for the children. The record reflects that at the time of trial, Elizabeth's only income was payments she received from a blind trust. She testified that she generally received about $27,000 to $28,000 per year from the trust, or approximately $2,300 per month. Her monthly expenses at the time of the modification trial for the mortgage, utilities, and food totaled more than $4,000, but she admitted that her food expenses would be reduced by the joint custody arrangement. Elizabeth testified that she did not have any money. In its ruling on the modification, the district court found that the evidence showed that Elizabeth received a $95,000 inheritance during the marriage, the equity in the $500,000 marital home in the divorce, and an unexplained deviation upward in child support, and that her new husband contributed to the family's home expenses.

Elizabeth had previously been employed by an aircraft charter company as a pilot; in 2004, she was employed full

time and earned $23,000. There was evidence that Elizabeth would be eligible for a copilot position with her former employer at a salary of $1,500 per month, or $18,000 per year. However, to accept the position, she would have to move from Omaha, Nebraska, to California and undergo a minimum of 4 weeks' requalification training, which training Elizabeth testified would cost $10,000 and would be deducted from her pay. Elizabeth testified that there were no jobs available for her as a pilot in the Omaha area. Elizabeth further testified that she had an ongoing medical condition which prevented her from attaining the medical clearance necessary to work as a commercial pilot. Neither party elicited an explanation of Elizabeth's medical condition.

At the time of trial, Kari was employed as a director of safety at a charter management company for aircraft. Kari testified that he had been involved in the aviation industry for 50 years. Kari testified that while he "may not be an expert witness," in his opinion, Elizabeth could earn "anywhere from 60 to 80,000 a year" as a licensed pilot. Kari testified that he could provide "lots of names" of companies paying in the $60,000 to $80,000 range, "but they're supposed to be confidential." Kari testified that Elizabeth could earn $52,000 per year at her former workplace, though he had "no idea" whether she had achieved such earnings there previously. He requested that the district court impute a wage-earning capacity of $52,000 per year to Elizabeth.

The parties submitted their respective proposed support calculations. Kari proposed that his child support obligation, based on joint physical custody, be reduced to $1,692 per month, retroactive to October 2011 (the month after he filed for modification), and that after the date of the modification order, his obligation be set at $450 per month for two children. He requested a "credit" of more than $19,000 which would reflect the difference between the $3,000 per month he had paid for child support since October 2011 (during the pendency of the modification) and the new amount he proposed as his obligation during that time. He also requested a credit for almost $63,000 for Social Security benefits received by the children but never credited against his support obligation.

Elizabeth testified that she inadvertently removed $2,357.90 from an account of Kari's to pay her American Express bill. Kari requested a judgment to reimburse him for that amount.

Elizabeth proposed that Kari's child support obligation, based on joint physical custody, be set at $1,095 per month. She testified that adjusting the support obligation to give Kari a credit for past Social Security benefits paid to the children would present a significant hardship for her and the children. Elizabeth's counsel also informed the district court that Kari had previously filed a motion seeking to address the Social Security benefits but had withdrawn it. Elizabeth's counsel argued that to allow a retroactive credit after the accumulation of such benefits for more than 3 years since the decree had been entered would be inequitable.

The ensuing orders are complicated and summarized here. In summary, the district court entered an order in May 2013; then later in May, entered a nunc pro tunc order clarifying certain issues; and on August 16, filed an order ruling on Kari's motion to alter or amend in which the district court amended aspects of its prior order. The August order is the order appealed from, but earlier orders found facts relevant to our consideration on further review. For purposes of the issues relevant to this appeal concerning child support, the district court ultimately made rulings as follows:

Reasonable expenditures for the children, such as clothing and extracurricular activities, were allocated between the parents, commencing October 1, 2011, such that Elizabeth would be responsible for 40 percent and Kari would be responsible for 60 percent.

The district court applied the Nebraska Child Support Guidelines, and in connection with its calculation of Kari's child support obligations, the district court used Kari's earnings at the time of the modification trial, which were less than his earnings at the time of the divorce, to calculate his monthly income. The district court found Kari's testimony concerning Elizabeth's earning capacity to be credible and reasonable, based on his experience as a pilot and his knowledge of the aviation industry, and determined that Elizabeth had a wage-earning capacity of $52,000 per year, even though she was

not employed at the time of trial. The district court calculated Elizabeth's monthly income based on the $52,000 potential wage earnings as well as the approximately $27,000 per year that she received as payments from a blind trust. The district court did not find Elizabeth's testimony to the effect that she was unable to work due to an unspecified medical condition to be credible.

In determining Kari's child support obligation, the district court noted that Kari's child support obligation from January 2010, when the divorce decree was entered, through September 2011, when he filed his application to modify the decree, was $3,000 per month as set forth in the stipulated decree. The district court determined that Kari's child support obligation should be reduced to $1,658 per month from October 2011, the month following the month in which he applied to modify the decree, through December 2012. In January 2013, the parties began joint physical custody. The district court determined that Kari's child support obligation should be set at $443 per month from January 2013 through May 2014, a period during which both children would be minors, and $311 per month from June 2014 until July 2017, a period during which only one child would be a minor.

In its several orders, the district court reasoned that because Kari had paid an upward adjustment of $3,000 per month during the pendency of the modification proceedings but his obligation was reduced retroactive to October 2011, Kari had in effect overpaid child support. Specifically, in view of the fact that, applying the child support guidelines, it had determined that Kari's child support payment should be reduced from $3,000 per month to $1,658 per month from October 2011 to December 2012, $443 from January 2013 to May 2014, and $311 from June 2014 to July 2017, and its order was not filed until August 16, 2013, the district court determined that Kari was entitled to a credit of $41,852.11 as a result of his "overpayment" of child support obligations during the pendency of the modification proceedings. The district court awarded Kari a credit of $16,380 against his future child support obligations and, because the overpayment credit would not be wholly consumed, a judgment against Elizabeth for the

remaining $25,472.11. This judgment included the $2,357.90 that Elizabeth had withdrawn from an account of Kari's to pay her American Express bill, but this portion of the judgment is not disputed on appeal.

With respect to the payment of Social Security benefits to the children, the district court concluded that under Nebraska jurisprudence, it could not equitably provide Kari a credit for the Social Security benefits received by the children. The district court reasoned that if such benefits had been disclosed at the time of the decree of dissolution, it could have reduced Kari's child support obligation by effectively attributing such payments to Kari's child support obligation, but because the parties had stipulated to a child support obligation of $3,000 per month in the stipulated decree, the district court had to treat the Social Security benefits as a gratuitous overpayment.

Elizabeth appealed the district court's order to the Court of Appeals, and Kari cross-appealed. In her appeal, Elizabeth claimed, inter alia, that the district court erred when it (1) determined the parties' earning capacities and (2) granted Kari a credit against future child support obligations for past overpayments of child support during the pendency of these modification proceedings and granted Kari a judgment against her for the balance of the credit which exceeded future child support obligations. Elizabeth made another assignment of error regarding retroactivity of the modification, which assignment of error the Court of Appeals rejected. Elizabeth did not cross-petition for further review of this issue. In his cross-appeal, Kari claimed only that the district court erred when it refused to award him a credit against his child support obligations for the Social Security benefits that had been paid to the children based on his work history.

The Court of Appeals affirmed the district court's orders in part, reversed the orders in part, and remanded the cause for further proceedings in a memorandum opinion filed October 1, 2014, in case No. A-13-775. The Court of Appeals determined that the district court abused its discretion when it imputed a wage-earning capacity of $52,000 per year to Elizabeth. The Court of Appeals determined that there was not sufficient evidence demonstrating that she could realize such a level

of earnings and remanded the cause for the determination of "an appropriate level of earning capacity [for Elizabeth] that is supported by competent evidence in the record." The Court of Appeals also determined that although the district court's determination that Kari should get relief retroactively was not error, because Kari continued to pay the $3,000 per month child support required in the decree, the district court erred when it granted Kari a credit against future child support obligations and further erred when it entered a judgment against Elizabeth for the anticipated unused overpayment of child support. Finally, the Court of Appeals rejected Kari's assignment of error on cross-appeal and concluded that the district court did not err when it had concluded that the Social Security benefits received by the children were a gratuitous payment that could not be credited against Kari's child support obligations. We summarize the Court of Appeals' memorandum opinion in more detail in the analysis portion of this opinion.

Kari petitioned for further review of the Court of Appeals' memorandum opinion. We granted the petition.

## III. ASSIGNMENTS OF ERROR

Kari claims the Court of Appeals erred when it determined that (1) the district court erred when it imputed to Elizabeth a wage-earning capacity of $52,000 per year, (2) the district court correctly determined that Kari should not be given credit against his child support obligation for Social Security benefits paid to the children, and (3) the district court erred when it gave Kari credit for overpayment of child support obligations in the form of a credit against future child support obligations and in the form of a judgment against Elizabeth.

## IV. STANDARDS OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). The same standard applies to the modification of child support. *Id*.

[2] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the court below. See *Jensen v. Jensen*, 275 Neb. 921, 750 N.W.2d 335 (2008).

## V. ANALYSIS

### 1. Elizabeth's Wage-Earning Capacity

Kari claims that the Court of Appeals erred when it reversed the portion of the district court's order imputing a wage-earning capacity of $52,000 per year to Elizabeth and remanded the cause for a determination of Elizabeth's earning capacity. We reject this assignment of error.

[3-5] We have previously addressed the law applicable to determining a parent's earning capacity for child support purposes and stated:

> In general, child support payments should be set according to the Nebraska Child Support Guidelines. The guidelines provide that "[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources." Use of earning capacity to calculate child support is useful "when it appears that the parent is capable of earning more income than is presently being earned."

*Freeman v. Groskopf*, 286 Neb. 713, 720, 838 N.W.2d 300, 307 (2013). Generally, earning capacity should be used to determine a child support obligation only when there is evidence that the parent can realize that capacity through reasonable efforts. See *Johnson v. Johnson*, 20 Neb. App. 895, 834 N.W.2d 812 (2013).

The record shows that at the time of trial, Elizabeth's actual income was about $27,000 to $28,000 per year from a trust. The record indicates that the trust income was expected to continue. Therefore, the issue with regard to her earning capacity focuses on her ability for wage earning.

At the time of trial, Kari worked as a director of safety at a charter management company for aircraft. Based on his nearly

50 years in the aviation industry, Kari opined that Elizabeth could earn $60,000 to $80,000 per year as a licensed pilot. Kari testified that while he knew "lots of names" of companies paying in that range, those names were "supposed to be confidential." Kari requested that the district court impute to Elizabeth an annual earning capacity of $52,000, which he testified she could earn at her former workplace, though he had "no idea" whether she had achieved such earnings there in the past. The district court found Kari's testimony concerning Elizabeth's wage-earning capacity to be credible and reasonable based on his years of experience in the aviation industry and determined that Elizabeth had a wage-earning capacity of $52,000 per year.

The trial record shows that Elizabeth's wage earnings had peaked at $23,000 in 2004, when she was employed as a full-time pilot. Elizabeth testified that there were no jobs available for her as a pilot in the Omaha area at the time of trial. There was evidence that she was eligible for a pilot position with a former employer at a salary of $18,000 per year, but that accepting the position would require her to relocate to California and pay $10,000 for training. Elizabeth stated that a medical condition prevented her from working as a commercial pilot. The district court did not find Elizabeth's testimony concerning her unspecified medical condition to be credible.

With regard to Elizabeth's wage-earning capacity, the Court of Appeals determined that the record supported imputing some level of earning capacity to Elizabeth, but that the only evidence setting that figure at $52,000 annually was Kari's unsupported testimony of his opinion of Elizabeth's potential earnings in the aviation field. There was conflicting evidence regarding Elizabeth's ability to work as a pilot, and as it was permitted to do, the Court of Appeals gave weight to the fact that the trial judge heard and observed the witnesses and rejected Elizabeth's version in which she testified that an unspecified medical condition rendered her unable to work as a pilot. See *Brockman v. Brockman*, 264 Neb. 106, 646 N.W.2d 594 (2002). Thus, the Court of Appeals accepted the district court's conclusion that Elizabeth was able to work, but it

determined that the district court abused its discretion when it imputed an annual wage-earning capacity of $52,000 based on the record and remanded the cause for further evidence on this issue. Following our de novo review of the evidence, we find no error by the Court of Appeals in this regard.

A review of the record shows that although Kari was employed in the aviation industry in some capacity for many years, he did not testify that he had a specific basis for his purported knowledge of compensation for pilots or positions available for pilots. He did not refer to any research or inquiries on the matter, demonstrated limited knowledge of Elizabeth's past earnings, declined to specify names of potential employers, and admitted that he "may not be an expert witness." Further, as the Court of Appeals pointed out, the evidence of Elizabeth's full-time job offer with her former employer for $18,000 per year called into question Kari's opinion that she could obtain employment there at a rate of $52,000 per year, as well as his contention that she is capable of earning that sum. On the record before us, it appears that with relocation and training requirements, attaining the position with Elizabeth's former employer could require her to exert something more than "reasonable efforts."

Following our de novo review of the record, we agree with the Court of Appeals that the evidence does not support the district court's determination Elizabeth had an annual wage-earning capacity of $52,000 and that in so finding, the district court abused its discretion. Because determination of the parties' income or earning capacity is critical to the determination of child support, this portion of the order must be reversed and the cause remanded for a determination of Elizabeth's wage-earning capacity. Accordingly, we affirm the Court of Appeals' ruling reversing the matter of Elizabeth's earning capacity and remand the cause to the district court.

Kari raises several issues in addition to Elizabeth's earning capacity in his petition for further review. Although the resolution of these issues is not entirely necessary to the disposition of the current appeal, we address them below because they are relevant to the complete disposition of the matter upon remand. See *In re Interest of Laurance S*., 274 Neb. 620, 742

N.W.2d 484 (2007) (appellate court may, at its discretion, discuss issues unnecessary to disposition of appeal where those issues are likely to recur during further proceedings).

## 2. SOCIAL SECURITY BENEFITS
### PAID TO CHILDREN

Kari claims that the Court of Appeals erred when it affirmed the district court's determination that Kari should not be given credit against his child support obligation for the Social Security benefits which were paid to the children. He contends that these benefits should not have been treated as gratuitous payments to the children. Kari asserts that he was entitled to have his child support obligation offset by the amount of Social Security benefits the children have received. We find no merit to this assignment of error and therefore affirm the decision of the Court of Appeals which affirmed the ruling of the district court which deemed the Social Security benefits a gratuity.

[6] We have considered the issue of applying Social Security benefits to meet a parent's child support obligation on several occasions. E.g., *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999); *Hanthorn v. Hanthorn*, 236 Neb. 225, 460 N.W.2d 650 (1990); *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985); *Schulze v. Jensen*, 191 Neb. 253, 214 N.W.2d 591 (1974). The cases often involve disability benefits or child support arrearages, but we find guidance in their reasoning. We have explained that Social Security benefits are not a mere gratuity from the federal government but have been earned through an employee's payment of Social Security taxes. See *Brewer v. Brewer*, 244 Neb. 731, 509 N.W.2d 10 (1993). A request to apply Social Security benefits to a child support obligation is merely a request to identify the source of payment. See *Gress v. Gress, supra*. A Social Security benefit can serve as a substitute source for income. See *id*.

Cases illustrate that the better practice is to make the dissolution court cognizant of the payment of Social Security benefits to the children at the time of entering the decree so that the dissolution court can make a fully informed decision. See *Hanthorn v. Hanthorn, supra* (discussing collected cases).

It nevertheless remains at the court's discretion, depending on the overall situation of both the parties and children, to order child support in addition to the amounts received from Social Security. E.g., *Lainson v. Lainson, supra*.

With respect to the Social Security payments under the facts of this case, the district court determined that under Nebraska jurisprudence, it could not equitably provide Kari a credit for the Social Security benefits received by the children. The district court reasoned that if the Social Security benefits had been disclosed at the time of the divorce proceedings, the dissolution court could have attributed such payments to Kari's child support obligation. However, because the parties did not inform the dissolution court of the Social Security payments at the time of the divorce and had agreed to a child support obligation of $3,000 per month in the stipulated decree with no explanation of the upward deviation, the district court determined that it was obligated to treat the Social Security benefits as a gratuitous payment. On appeal, the Court of Appeals agreed.

Based on the jurisprudence set forth above, the procedural history, and the equities of the case, we conclude that the Court of Appeals correctly affirmed the district court's determination and we affirm the Court of Appeals' decision on this issue. The record shows that the children received Social Security benefits in 2010, 2011, and part of 2012. Kari testified that when he stipulated to the terms of the original decree, entered January 10, 2010, he understood that the children were receiving Social Security benefits by virtue of his status as a retired taxpayer and that these benefits were in addition to his obligations for child support and alimony.

Approximately 6 months after entry of the decree of dissolution, Kari filed a motion for an order nunc pro tunc, in which motion he asserted that the dissolution court was not aware of the fact the children were receiving Social Security payments and that had the dissolution court been aware of such fact, Kari's child support amount would have been "far less." Kari later chose to withdraw the motion, and the dissolution court did not address it. Rather than applying early on for a modification of the child support order to reflect

receipt of Social Security benefits as the partial source of his obligation, Kari decided to pursue the personal jurisdiction issue—which we rejected in *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011)—because he wanted a "do-over." Thus, Kari knowingly waived an early opportunity to address the Social Security issue and chose instead "to gamble on the ultimate outcome" of his first appeal. *Hanthorn v. Hanthorn*, 236 Neb. 225, 231, 460 N.W.2d 650, 654 (1990).

In light of our jurisprudence and the equities of the case, we conclude that the Court of Appeals did not err when it affirmed the district court's determination that the Social Security payments made to the children should be treated as a gratuity. Accordingly, Kari should receive no child support credit for the Social Security payments upon remand.

### 3. CHILD SUPPORT CREDIT AND JUDGMENT

Kari claims the Court of Appeals erred when it reversed the district court's decision which found that Kari had overpaid child support during the pendency of the modification proceedings, granted Kari a credit for overpayment against future child support, and entered a judgment against Elizabeth for the anticipated unused overpayment. Because of our remand for a determination of Elizabeth's earning capacity, we address Kari's assignment of error for guidance on remand.

### (a) Retroactive Modification of Child Support

[7] We begin by addressing whether a retroactive modification of Kari's child support is permissible under the facts of this case. Both the district court and the Court of Appeals determined that if Kari was found to have overpaid during the pendency of the modification proceedings and it was determined that he was entitled to a credit, the credit could be applied retroactively to the month after Kari filed for modification. Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and we will affirm its decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Applying the law to the facts of this case, we agree that retroactive

modification is appropriate if the further evidence shows an overpayment and the principles applicable to awarding a credit are met.

[8-10] In determining whether to order a retroactive modification of child support, a court must consider the parties' status, character, situation, and attendant circumstances. See, *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280 (2005); *Cooper v. Cooper*, 8 Neb. App. 532, 598 N.W.2d 474 (1999). Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. See *Freeman v. Groskopf, supra*. The children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay. *Pursley v. Pursley*, 261 Neb. 478, 623 N.W.2d 651 (2001); *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013).

In ruling on Kari's motion for modification, the district court based its child support calculation on its finding that Elizabeth had a wage-earning capacity of $52,000 per year and reasoned that Kari had overpaid his child support obligation when he paid $3,000 per month during the pendency of the modification proceedings. Kari had filed his application for modification in September 2011, and the district court retroactively reduced Kari's child support obligation by varying amounts from October 2011 to the time of the modification ruling and forward to July 2017. The district court ordered that Kari be compensated for his overpayment by receiving credit against his future child support obligations and by receiving a lump-sum judgment against Elizabeth for the unused overpayment. Although the Court of Appeals determined that the district court's conclusion approving retroactive modification was not an abuse of discretion, the Court of Appeals ultimately concluded that because Kari had agreed to pay $3,000 per month in the decree, he was not eligible to receive a credit.

Regarding the retroactive issue, on our de novo review of the record, we find no equities that would support a decision not to apply a modified child support obligation of Kari's

retroactively to October 2011, the month following the filing of Kari's motion to modify. Although Elizabeth's wage-earning capacity is yet to be determined, it is undisputed that she will continue to receive income of approximately $27,000 per year from the trust; that she now shares joint physical custody with Kari, resulting in some reduction of expenses; and that the children have retained the Social Security benefits, which at trial were approximately $63,000.

We also observe that the legal process for resolving Kari's modification effort has contributed to delay, and in equity, he should not be penalized therefor. We have stated that in the context of retroactive modification, parties ought not be penalized by delay in the legal process, nor should a party gratuitously benefit from such delay. See *Pursley v. Pursley, supra*. The judge who presided over the dissolution was not the judge who presided over the modification, and it has been suggested that some delay in the disposition of this matter was due, in part, to the retirement of the first judge and the ensuing reassignment of the case.

Accordingly, we conclude that retroactive modification of Kari's child support obligation and the timing of retroactive modification from the first day of the month following the filing of the application for modification are permissible in this case.

### (b) Credit for Modified Child Support

As noted above, the district court partly based its child support calculation on its erroneous finding that Elizabeth had an annual wage-earning capacity of $52,000. The district court applied the child support guidelines and found that Kari was entitled to a reduced child support obligation and that he had overpaid his child support obligation by paying $3,000 per month while the modification proceedings were pending. The court ordered that Kari be compensated for his overpayment, in part by a credit against his future child support obligations and in part by a lump-sum judgment against Elizabeth. On appeal, the Court of Appeals essentially determined that Kari could not have overpaid child support, because he had stipulated to the $3,000-per-month child support payment in the

decree, and that therefore, Kari was not eligible for a credit. We disagree with the reasoning of the Court of Appeals. Upon remand, after receipt of evidence of Elizabeth's wage-earning capacity and application of the child support guidelines, if it appears that Kari has overpaid child support during the pendency of the modification proceedings, on the facts of this record, Kari is not ineligible for a credit by virtue of having paid the $3,000 per month. Whether Kari is awarded a credit under the exception in *Griess v. Griess*, 9 Neb. App. 105, 608 N.W.2d 217 (2000), explained below, is to be determined by the district court upon remand.

[11] The Court of Appeals has enunciated the general rule for support overpayment claims: No credit is given for voluntary overpayments of child support, even if they are made under a mistaken belief that they are legally required. See *id*. However, the general rule continues that "[e]xceptions are made to the 'no credit for voluntary overpayment rule' when the equities of the circumstances demand it and when allowing a credit will not work a hardship on the minor children." *Id*. at 115, 608 N.W.2d at 224. Nebraska appellate courts have generally considered the application of overpayment credits as a question of law. See, *Jensen v. Jensen*, 275 Neb. 921, 750 N.W.2d 335 (2008); *Jameson v. Jameson*, 13 Neb. App. 703, 700 N.W.2d 638 (2005).

In determining that Kari was not entitled to the relief provided by the district court, the Court of Appeals cited to *Griess v. Griess, supra*. The Court of Appeals acknowledged that it had decided that the relief of a credit against future support payments was appropriate in *Griess*, because the trial court had entered a grossly erroneous modification order that was prepared by the attorney for the party receiving the child support and the attorney for the paying party had overlooked, ignored, and implicitly approved the erroneous calculation. The Court of Appeals distinguished the present case from *Griess* primarily on the basis that Kari's claimed overpayment was not the result of a mistake but was an amount to which he had agreed in the stipulated decree. Because Kari had agreed to the $3,000, the Court of Appeals reasoned that Kari was precluded

from receiving a credit and that the district court had erred when it had found Kari eligible for a credit.

On the record before us, we disagree with the Court of Appeals' application of *Griess* and determine that upon remand, Kari is not ineligible for a credit for overpayment of child support that may be found on remand. The determination of Kari's entitlement to a credit, if any, will necessarily be made by the district court upon remand based on a more developed record regarding the parties' relative incomes.

Our jurisprudence permits a credit for overpayment under the circumstances of this case. See, *Jensen v. Jensen, supra* (stating that credit against child support is permissible where equity requires it, citing *Griess*); *Jameson v. Jameson, supra* (quoting rule in *Griess* but finding it inapplicable); *Griess v. Griess, supra*. Other jurisdictions are in accord with Nebraska jurisprudence and have allowed a credit for overpayments made under earlier, higher child support orders, after a later retroactive modification reduced the child support order. See, e.g., *In re Marriage of Frazier*, 205 Ill. App. 3d 621, 563 N.E.2d 1236, 151 Ill. Dec. 130 (1990) (after reducing obligor father's child support obligations retroactively to date of his petition for modification, court allowed father credit against ongoing child support obligations for having paid higher child support amounts due prior to modification); Annot., 7 A.L.R.6th 411 (2005).

We believe the circumstances in this case permit the award of a credit upon remand for overpayment of child support if, upon application of the child support guidelines, and in the absence of hardship, the district court finds an overpayment has been made during the pendency of the modification proceedings. We find it relevant the record shows that Kari repeatedly attempted to lower his obligation during the pendency of the modification process, but that his efforts were unsuccessful, due in part to Elizabeth's resistance and delay in processing the case. Kari filed his application for modification in September 2011, but the last order disposing of the application was not filed until August 2013. Trial was initially set for April 10, 2012. Prior to trial, the parties reported that

they had "settled" the matter. However, after the trial date had passed, according to the pleadings, Elizabeth repudiated the settlement. On September 6, Kari sought temporary abatement of child support. On September 11, the pretrial order set the trial for January 24, 2013. On October 19, 2012, prior to the new trial date, Kari filed a motion to temporarily reduce his child support and a motion for credit. Elizabeth sought and obtained a continuance of Kari's temporary motions. The district court ordered that Kari's temporary motions were to be addressed at the modification trial, and the trial was set for January 2013. So, Kari continued to abide by the original order of $3,000 per month.

Our appellate jurisprudence has addressed the efforts an obligor parent has made during the pendency of a motion to modify a child support obligation. In *Lucero v. Lucero*, 16 Neb. App. 706, 750 N.W.2d 377 (2008), the Court of Appeals indicated that the obligor parent's failure to seek relief during the pendency of the case weighed against granting credit. The Court of Appeals stated: "[The ex-husband] could have sought and likely obtained a temporary order upon motion and affidavit, suspending his payments pending the final hearing on his request to terminate child support payments rather than paying them and hoping to get them back from his financially distressed ex-wife." *Id*. at 720, 750 N.W.2d at 388. Unlike the obligor in *Lucero*, Kari made repeated attempts to lower his child support obligation during the pendency of the modification. His efforts to obtain relief sooner should be recognized.

We have observed, in the context of retroactive modification, that parties ought not be penalized by delay in the legal process. See *Pursley v. Pursley*, 261 Neb. 478, 623 N.W.2d 651 (2001). We logically apply the principle to our consideration of granting a credit. Although Kari was not subject to a grossly erroneous child support order like the obligor in *Griess v. Griess*, 9 Neb. App. 105, 608 N.W.2d 217 (2000), we believe the exception in *Griess* is applicable to the facts of this case and makes Kari eligible for a credit.

(c) Judgment Against Elizabeth for
Anticipated Unused Child Support
Overpayment Credit

The district court found that Kari had overpaid child support during the pendency of the modification proceedings, and ordered that the overpayment serve as a credit for Kari's obligations during the pendency of the modification proceedings and during the remainder of the children's minority. The district court calculated that the overpayment would not be exhausted and entered judgment against Elizabeth for the anticipated unused overpayment. The Court of Appeals reversed the judgment in part, because "there was no showing [that Elizabeth] has the means to pay" the approximately $23,114.21 portion of the judgment attributable to the anticipated unused overpayment. Kari claims the Court of Appeals erred when it reversed the judgment against Elizabeth for the future unused overpayment of child support. Although our reasoning differs somewhat from that of the Court of Appeals, we find no error and affirm the reversal of the judgment attributable to the anticipated unused child support credit. Upon remand, the district court is instructed that entry of a judgment against Elizabeth for future anticipated unused overpayment is not permitted under Nebraska jurisprudence.

The judgment under review suffers from the same weaknesses as do lump-sum child support judgments in satisfaction of future payments, which are disfavored in Nebraska. In *Gibson v. Gibson*, 147 Neb. 991, 26 N.W.2d 6 (1947), the trial court awarded, in advance, all the child support to be paid for the following 13 years. On appeal, this court observed that child support is at all times subject to change and that the Nebraska Legislature had provided for such changes by allowing for modification of child support. In *Gibson*, we reasoned that lump-sum awards of child support are not supported by the law, because the modification statute "would be entirely ineffective if such a final judgment could be entered as was done in this case." 147 Neb. at 1000, 26 N.W.2d at 10. In *Gibson*, we stated:

It is improper under the law to make a final, definite, and positive entry of such a judgment for the support of a minor child, for the amount to be paid must vary with the several needs of the child for food, clothing, and expenses involved in his education, with his necessary medical and surgical requirements, and the court may also consider such changes in the financial condition of the father [obligor] as are shown by the testimony. Therefore, the law has provided that the monthly payments can be changed from time to time as the evidence warrants.

147 Neb. at 1000, 26 N.W.2d at 10. See, similarly, *Gress v. Gress*, 257 Neb. 112, 117, 596 N.W.2d 8, 13 (1999) (discussing credits, wherein we stated: "Future obligations are not yet accrued, and because they are subject to modification, they are not ascertainable"). For completeness, we note that although lump-sum child support awards are not favored under the law in Nebraska, an obligor may receive credit against future obligations for payments already made, including a lump-sum payment already made where such payment does not preclude future child support awards or adjustments. *Jensen v. Jensen*, 275 Neb. 921, 750 N.W.2d 335 (2008).

In the present case, the district court's judgment against Elizabeth was based on its assumption as calculated in 2013 that there would be no changes to the child support obligations of the parties throughout the remainder of the children's minority ending in 2017. The assumption that there will be no further modifications is not correct and contrary to law. Our reasoning in *Gibson* still applies. Therefore, we agree with the Court of Appeals that the lump-sum judgment against Elizabeth for the anticipated unused child support credit should be reversed.

In sum, on remand, the amount of the parties' child support obligations shall be calculated based, in part, on a determination of Elizabeth's wage-earning capacity that is supported by competent evidence in the record, the Social Security benefits received by the children are to be considered a gratuity, and Kari is not to receive a credit therefor. Given the record and equities, we conclude that modification of Kari's child

support obligation retroactive to October 2011 is permissible. In the event that the district court determines that Kari has overpaid child support during the pendency of the modification proceedings, Kari is eligible to receive a credit. Such credit may be applied against future child support obligations on a month-to-month basis. However, because our jurisprudence disfavors lump-sum final child support judgments, we reverse the district court's judgment against Elizabeth for $25,472.11, which included $23,114.21 of Kari's anticipated unused overpayment credit, and we remand the cause with directions in accordance with this opinion.

### (d) Judgment Regarding American Express Reimbursement

The $25,472.11 judgment entered by the district court was composed of $23,114.21 attributable to the impermissible award against Elizabeth for Kari's anticipated future unused child support overpayment credit and $2,357.90 attributable to the withdrawal that Elizabeth made from Kari's account, which she used to pay an American Express bill. The Court of Appeals disapproved of the $23,114.21 portion and approved of the $2,357.90 portion, as do we.

We have reversed the district court's judgment of $25,472.11 against Elizabeth. However, that judgment included $2,357.90 that Elizabeth withdrew from an account of Kari's to pay an American Express bill. The parties do not dispute the propriety of that portion of the judgment, and it is supported by evidence in the record. Accordingly, on remand, we order the district court to enter a judgment against Elizabeth in the amount of $2,357.90.

### VI. CONCLUSION

For the foregoing reasons, on further review, we conclude as follows: (1) The Court of Appeals correctly determined that the district court erred when it imputed to Elizabeth a wage-earning capacity of $52,000 per year and reversed the order and remanded the cause for a hearing on Elizabeth's wage-earning capacity, and we affirm this decision; (2) the Court of Appeals did not err when it affirmed the district

court's conclusion that the Social Security benefits paid to the children were a gratuity and that Kari should not be given a credit upon remand, and we affirm this decision; and (3) although the Court of Appeals correctly affirmed the district court's decisions that a downward modification in Kari's child support could be retroactive to the month after the filing of the application to modify, that the judgment against Elizabeth for $25,472.11 should be reversed, that a judgment against Elizabeth for $2,357.90 should be entered, and we affirm these decisions, it erred when it reasoned that upon remand, Kari could not receive credit for overpayments, if any, made during the pendency of the modification proceedings for the reason that Kari had continued to pay the $3,000-per-month child support ordered in the decree. To the contrary, the fact that Kari continued to pay what had been ordered does not preclude consideration of a potential credit after receipt of additional evidence upon remand pursuant to the exception in *Griess v. Griess*, 9 Neb. App. 105, 608 N.W.2d 217 (2000). Accordingly, we affirm in part, and in part reverse and remand with directions.

Affirmed in part, and in part reversed and remanded with directions.

---

State of Nebraska, appellee, v. Craig Anthony Johnson, also known as Craig A. Johnson, appellant.
___ N.W.2d ___

Filed May 15, 2015.    No. S-14-101.

1. **Appeal and Error.** For an appellate court to consider an alleged error, a party must specifically assign and argue it.
2. **Juries: Discrimination: Equal Protection: Prosecuting Attorneys.** A prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, if that reason is related to his view concerning the outcome of the case. But under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), a peremptory challenge to remove a prospective juror for a racially discriminatory reason violates the Equal Protection Clause.
3. **Juries: Discrimination: Prosecuting Attorneys: Proof.** Determining whether a prosecutor impermissibly sought to remove a prospective juror based on race is